UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

**FILED**
2004 APR 29 A 9:29
U.S. DISTRICT COURT
HARTFORD, CT.

| | |
|---|---|
| John P. Naiden, )<br>)<br>          Plaintiff, )<br>)<br>v. )<br>)<br>Ecolab Inc., )<br>)<br>          Defendant. )<br>) | Civil Action No. 303cv0608 (AVC) |

## NOTICE OF APPEAL

1. Pursuant to F.R.A.P. 4(a)(1), JOHN P. NAIDEN hereby gives notice and appeals to the United States Court of Appeals for the Second Circuit from the following Judgment: Ruling on the Defendant's Motion to Dismiss.

2. The judgment order in this action was entered on March 31, 2004.

_____
JOHN P. NAIDEN, pro se plaintiff
66 Route 313 West
Arlington, VT 05250

## CERTIFICATE OF SERVICE

I sent a copy of my Notice of Appeal by First Class, U.S. Mail on April 28, 2004, to:

>Tasos C. Paindiris
>Jackson Lewis LLP
>55 Farmington Ave., Suite 1200
>Hartford, CT  06105

_____
JOHN P. NAIDEN, pro se plaintiff

2

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN P. NAIDEN,
    Plaintiff,

v.

                                   Civil No. 3:03cv0608(AVC)

ECOLAB, INC.,
    Defendant.

## RULING ON THE DEFENDANT'S MOTION TO DISMISS

    This is an action for damages arising out of the demotion of the plaintiff, John P. Naiden from his position with the defendant, Ecolab, Inc. ("Ecolab"). The complaint alleges violations of the Age Discrimination In Employment Act ("A.D.E.A."), 29 U.S.C. § 623, the Connecticut Fair Employment Practices Act, Conn. Gen. Stat § 46-a60, and common law tenets concerning physical injury, intentional infliction of emotional distress, and negligent infliction of emotional distress.

    Ecolab now moves pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss the federal age discrimination claim for lack of subject matter jurisdiction. Ecolab also moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the second, third, and fourth count of Naiden's complaint for failure to state a claim upon which relief can be granted.

    The issues presented are: 1) whether Naiden served Ecolab with process in a timely fashion with respect to his age discrimination claim; 2) whether the complaint presents allegations of conduct by Ecolab that is sufficiently extreme and outrageous to support a cause of action for intentional infliction of emotional distress; 3) whether the complaint presents allegations of conduct by Ecolab that is sufficient to support a cause of action for negligent infliction of emotional distress; and 4) whether the exclusivity

provision of the Connecticut Worker's Compensation Act bars Naiden's claim for physical injury.

For the reasons that hereafter follow, the court concludes: 1) Naiden's age discrimination claim in count one is barred as a matter of law; 2) count two of the complaint does not allege conduct by Ecolab that is sufficiently extreme and outrageous to support a cause of action for intentional infliction of emotional distress; 3) count three of the complaint does not allege conduct by Ecolab that is sufficient to support a cause of action for negligent infliction of emotional distress; and 4) the exclusivity provision of the Connecticut Worker's Compensation Act bars Naiden's claim for physical injury in count four. Ecolab's motion to dismiss the complaint is therefore granted.

## FACTS

The complaint alleges that Ecolab specializes in cleaning and sanitation services and products, which it sells to restaurants, hotels, and other commercial facilities. Since 1944, Ecolab has been registered to conduct business in Connecticut, although it is incorporated in Minnesota, with its' principal place of business located in St. Paul, Minnesota. CT Corporation System is Ecolab's agent for service of process and is registered with the Connecticut Secretary of State.

The plaintiff, John P. Naiden, is a resident of Connecticut. During the period pertaining to the claims asserted in the complaint, Ecolab employed Naiden "to perform a managerial and sales position from [his] residence and Ecolab's office." In August 1978, Ecolab promoted Naiden to territory manager. In February 1992, Ecolab again promoted Naiden to district manager. As a district manager, Naiden's responsibilities included supervising the "business within the area, including sales planning and management, personnel, office facilities and management, and company car and van management."

In January 1999, Ecolab officials regrouped its operations in Hartford to the New York area, at which point Wayne Moeller, the assistant vice president of sales for Ecolab's New York sales area, became Naiden's direct supervisor. Naiden's complaint alleges that "several times since [his] transfer into the New York Area . . . Moeller made discriminatory remarks about [his] age and the age of other, older employees." For example, the complaint alleges that during several meetings, "Moeller would introduce topics with the phrase 'you older guys will probably have more trouble with this . . .'"

In September 1999, the complaint alleges that Moeller began sending Naiden critical memos that Naiden felt portrayed him as an "incompetent, non performing district manager", with poor working habits. On October 2, 2000, Naiden underwent surgery. The complaint alleges that, despite the fact that Moeller knew about the surgery, he scheduled Naiden for lap-top training two days afterwards, and told him that if he could not attend, "a younger guy [Jim Pilch] could attend in [his] place."

On November 27, 2000, Ecolab sent Naiden a letter informing him that he would soon be demoted from his position of district manager to his former position as territory manager. The complaint alleges that the latter position was a more physically demanding job. Under protest and with reservation, Naiden accepted the demotion to territory manager. On May 24, 2001, Naiden's "left ankle and leg broke to the point that [he] was unable to work", after which he went on long-term disability and social security disability income, which continues to the present.

On June 28, 2001, Naiden filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") contending: "(1) that Ecolab unlawfully discriminated against [Naiden] on account of his age; (2) that Ecolab's decision to demote [Naiden] constituted intentional infliction of emotional distress; (3) that Ecolab's

3

decision to demote [Naiden] constituted negligent infliction of emotional distress, and finally; (4) that Ecolab's decision to demote [Naiden] constituted physical injury."

On November 26, 2002, Naiden received a release of jurisdiction from the CCHRO pursuant to Conn. Gen. Stat. § 46a-101(a).[1] On February 24, 2003, the 90th day following his receipt of the release of jurisdiction,[2] the plaintiff handed the complaint in this action to Alphonse J. Paolillo, a deputy marshal for New Haven County, Connecticut. Fifteen days later, Paolillo mailed the writ, summons, and complaint to Ecolab via certified mail, return receipt requested. On March 17, 2003, postal authorities delivered the writ, summons, and complaint to Ecolab.

In April 2003, Naiden filed his complaint in Connecticut superior court. Within that same month, Ecolab petitioned for removal to the United States district court for the district of Connecticut, pursuant to 28 U.S.C. §§ 1441(a)[3] and 1446(a).[4] On August 8, 2003, Ecolab filed the within motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

---

[1] Conn. Gen. Stat. 46a-101(a) in relevant part provides that:
"No action may be brought in accordance with section 46a-100 unless the complainant has received a release from the commission in accordance with the provisions of this section."

[2] Conn. Gen. Stat. 46a-101(e) in relevant part provides that:
"Any action brought by the complainant in accordance with section 46a-100 shall be brought within ninety days of the receipt of the release from the commission."

[3] 28 U.S.C. §§ 1441(a) in relevant part provides that:
Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

[4] 28 U.S.C. §§ 1446(a) in relevant part provides that:
A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

4

## STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) must be granted if a plaintiff has failed to establish subject matter jurisdiction. *Golden Hill Paugusset Tribe of Indian v. Weicker*, 839 F.Supp. 130, 136 (D.Conn. 1993). In analyzing a motion to dismiss under Rule 12(b)(1), the court must accept as well pleaded factual allegations as true and must draw reasonable in favor of the plaintiff. *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993).

The defendant has also moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) involves a determination as to whether the plaintiff has stated a claim upon which relief may be granted. *Fischman v. Blue Cross Blue Shield*, 755 F. Supp. 528 (D. Conn. 1990). The motion must be decided solely on the facts alleged. *Goldman v. Belden*, 754 F. 2d 1059, 1065 (2d. Cir. 1985). In deciding a motion to dismiss, a court must assume all factual allegations in the complaint to be true and must draw reasonable references in favor of the non-moving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974). Such motion should be granted only where no set of facts consistent with the allegations could be proven which would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). The issue is not whether the plaintiff will prevail, but whether he would have the opportunity to prove his claims. *Id.*

## DISCUSSION

1. **Jurisdiction Claim**

Ecolab first seeks to dismiss the federal age discrimination claim for lack of subject matter jurisdiction, arguing that Naiden failed to properly serve the writ,

summons and complaint. Specifically, Ecolab argues that Naiden did not act in accordance with Conn. Gen. Stat. § 46a-101(e), requiring "any action brought by the complainant . . .[to] be brought within ninety days of the receipt of the release from the [CCHRO]."

In response, Naiden maintains that he timely served the writ, summons and complaint because "the complaint was delivered to [a process server, one Alphonse] Paolillo [within 90 days following the release of jurisdiction from the CCHRO [5]]." Further, Naiden argues that even if he failed to serve the writ, summons and complaint within the 90 day window required by Conn. Gen. Stat. § 46a-101(e), two other Connecticut statutes, Conn. Gen. Stat. § 33-663(b) and Conn. Gen. Stat. § 52-593(a) save the service of process from being considered untimely and thus ineffective. The court does not agree.

Conn. Gen. Stat. § 46a-101(e) requires that "any action [for discrimination] brought by the complainant . . . shall be brought within ninety days of the receipt of the release from the [CCHRO]." In *Rana v. Ritacco*, 236 Conn. 330, 338 (1996), the Connecticut Supreme Court stated that "the time when the action is regarded as having been brought is the date of service of the writ *upon the defendant*". (Emphasis added). On November 26, 2002, Naiden received the release from the CCHRO. He did not serve Ecolab until March 16, 2003, 110 days later. Consequently, service was not made within the 90 day window prescribed by Conn. Gen. Stat. § 46a-101(e). Further, neither Conn. Gen. Stat. § 33-663(b) and Conn. Gen. Stat. § 52-593(a) save the service of process in this case from being considered untimely. Conn. Gen. Stat. § 33-663(b) specifies that, if

---

[5] Conn. Gen. Stat. 46a-101(e) in relevant part provides that:
"Any action brought by the complainant in accordance with section 46a-100 shall be brought within ninety days of the receipt of the release from the commission."

6

a plaintiff delivers process to a process server for service upon a corporate defendant, process is deemed served:

> at the earliest of: (1) the date the corporation receives the mail; (2) the date shown on the return receipt, if signed on behalf of the corporation; or (3) five days after its deposit in the United States mail, as evidenced by the postmark, if mailed postage prepaid and correctly addressed.

On February 24, 2003, Naiden delivered the writ, summons, and complaint to deputy marshal Paolillo. On March 11, 2003, 105 days after Naiden's receipt of release of jurisdiction from the CCHRO, and fifteen days after the 90 day window for service under Conn. Gen. Stat. § 46a-101(e) had closed, Paolillo mailed the complaint to Ecolab. On March 16, 2003, process was served upon Ecolab, 20 days after the 90 day window for service had closed. Consequently, no relief is available under § 33-663(b).

Further, Conn. Gen. Stat. § 52-593(a) likewise fails to offer any relief. Under § 52-593(a),

> a cause or right of action shall not be lost because of the passage of the time limited by law within which the action may be brought, if the process to be served is personally delivered to a state marshal authorized to serve the process and the process is served, as provided by law, within fifteen days of the delivery.

Consequently, under § 52-593(a), a plaintiff may be entitled to an additional 15 days beyond the 90 day window to effect service so long as the plaintiff personally delivers process to a state marshal, and the marshal effects service within the 15 day extension.

In this case, the CCHRO granted Naiden a release of jurisdiction on November 26, 2002. The 90 day window for service of process under Conn. Gen. Stat. § 46a-101(e) therefore closed on February 24, 2003. Under Conn. Gen. Stat. § 52-593(a), a 15 day extension would have authorized Naiden until March 11, 2003 to effect service of process. However, process was not served until March 16, 2003, 5 days after the 15 day

7

extension had expired. The plaintiff therefore cannot show effective service under § 52-593(a). For all these reasons, service was not effective and the motion to dismiss the first count of the complaint is therefore granted.

### 2. Intentional Infliction of Emotional Distress

Ecolab next argues that the second count of the complaint should be dismissed for failure to "present allegations of 'extreme and outrageous conduct' necessary to maintain a claim for intentional infliction of emotional distress." Specifically, Ecolab maintains that "as a matter of law, a claim of employee . . . demotion is not, without more, sufficiently 'extreme and outrageous' to constitute intentional infliction of emotional distress."

Naiden responds that he alleged conduct that is sufficiently extreme and outrageous to survive Ecolab's motion to dismiss. Specifically, Naiden claims that the allegation that "Ecolab intentional physically injured him by forcing him into a physically demanding job it actually knew, or reasonably should have known, would disable him" is, by itself, sufficiently extreme and outrageous to substantiate his claim. The court disagrees.

In *Petyan v. Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986), the Connecticut Supreme Court held that in order to prevail on a claim of intentional infliction of emotional distress, the plaintiff is required to prove, among other factors, that "the defendant's conduct was extreme and outrageous."[6]

---

[6] "In order for the plaintiff to prevail in a case for liability under the [the intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the action intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress, and (4) that emotional distress was sustained by the plaintiff was severe." *Petyan v. Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986).

8

In *Reed v. Signode Corp.*, 652 F. Sup. 129, 137 (D. Conn. 1985), the district court held that, under Connecticut law, "the failure to grant a leave of absence to a cancer patient who needed treatment and the failure to rehire that patient after the completion of the treatment did not exceed all abounds usually tolerated by decent society".

In the present case, Naiden's allegations of extreme and outrageous behavior are based on following alleged conduct by Ecolab: (1) that Ecolab intentional physically injured him by forcing him into a physically demanding job it actually knew, or reasonably should have known, would disable him; (2) that Ecolab's decision to demote him was inaccurate, inconsistent and unfair, and (3) that through Ecolab's actions he suffered anxiety, humiliation, depression, inconvenience, annoyance, emotional distress and pain and suffering. The court concludes that such conduct, even if reprehensible, does not meet the standard of extreme outrageousness necessary to support Naiden's claim.

Accordingly, the defendant motion to dismiss the second count of the complaint is granted.

### 3.    Negligent Infliction of Emotional Distress

The defendant, Ecolab, Inc. ("Ecolab") next moves to dismiss count three of the complaint alleging negligent infliction of emotional distress. Specifically, Ecolab argues that the third count must be stricken because these allegations fail to constitute "unreasonable conduct in the termination process", as required for a claim of negligent infliction of emotional distress.

In response, Naiden maintains that, " . . . Ecolab misunderstands his claims." Specifically, Naiden maintains that "Ecolab knew or should have known that forcing him to take the physically demanding job of territory manager ran the risk of causing him to

9

suffer emotional distress, as well as anxiety, humiliation, depression, inconvenience, and annoyance." In addition, Naiden argues that his disability constitutes "effective termination", because he is no longer able to work, and thus the third count of his complaint should not be dismissed.

In *Perodeau v. Hartford*, 259 Conn. 729, 792 A.2d 752, 762-3 (2002), the Connecticut supreme court ruled that an employer: "may not be found liable for negligent infliction of emotional distress arising out of conduct occurring within a continuing employment context, *as distinguished from* conduct occurring in the termination of employment"(emphasis added). Because the complaint fails to allege unreasonable conduct in the termination of employment, the motion to dismiss count three is granted.

4.   **Physical Injury**

The defendant, Ecolab, Inc. ("Ecolab") next moves to dismiss count four of the complaint alleging intentional physical injury. Specifically, Ecolab argues that, because "[Naiden's] claim in count four is based entirely on allegations that [Ecolab's] actions during the course of employment resulted in physical injury [to him] . . . the claim is barred in its entirety by the exclusivity of the Connecticut Workers' Compensation Act." Conn. Gen. Stat. § 31-284(a) [7]

In response, Nadine maintains that his claim is not precluded because "the injuries [he] received. . .were not accidental but rather were intentional [on the part of Ecolab]."

---

[7] Conn. Gen. Stat. § 31-284 (a) provides that:

"(a) An employer ....shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment..., but an employer shall secure compensation for his employees..., except...compensation shall not be paid when the personal injury has been caused by the willful and serious misconduct of the injured employee or by...intoxication. All rights and claims...arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter, provided nothing in this section shall prohibit any employee from securing, by agreement with his employer, additional compensation from his employer for the injury or from enforcing any agreement for additional compensation."

10

Specifically, Naiden maintains that the court should apply the exception to the Connecticut Workers' Compensation Act set forth by the Connecticut Supreme Court in *Suarez v. Dickmont*, 229 Conn. 99, 639 A.2d 507 (1994). Thus, Naiden argues, the "Connecticut Workers' Compensation Act will not bar [his] physical injury claim."

This issue centers on the construction and application of the intentional tort exception to the exclusivity of the Workers' Compensation Act, as expressed in *Suarez*. In most cases, the exclusive remedy provisions of the Workers' Compensation Act bars independent actions by employees against their employers for injuries occurring in the workplace. Conn. Gen. Stat. § 31-284. In *Suarez*, the Connecticut Supreme Court noted that:

> the exclusivity provision of the Connecticut Workers' Compensation Act . . . bar[s] common law actions brought by employees against employers for job related injuries *with one narrow exception* that exists when the employer has committed an intentional tort or where the employer has engaged in willful or serious misconduct.

229 Conn. at 106 (emphasis added). In addition, the *Suarez* court extended the intentional tort exception to include situations in which the employee's injuries "were caused by work conditions intentionally created by the employer which made the injuries *substantially certain to occur*." *Id.* at 105 (emphasis added).

To show that an employer intentionally created conditions which made injuries substantially certain to occur the plaintiff must show "a design to injure either actually entertained or to be implied from the conduct and circumstances." *Id.* at 109.

Applying the demanding "*substantial certainty*" test to the facts presented, the court concludes that the facts allege here fail to demonstrate that Ecolab knew, with substantial certainty, that its' conduct would result in injury to Naiden. The motion to dismiss court four is therefore granted.

11

## CONCLUSION

Based on the foregoing reasons, the defendant's motion to dismiss the complaint (document no. 11) is granted.

It is so ordered this 31st day of March, 2004, at Hartford, Connecticut.

/s/ Alfred V. Covello
Alfred V. Covello
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN P. NAIDEN

V.                                    CASE NO. 3:03CV00608(AVC)

ECOLAB, INC.

## JUDGMENT

This action having commenced by a complaint and having been assigned to the Honorable Alfred V. Covello, United States District Judge; and

The defendant, having file a motion to dismiss and the Court, having considered the full record of the case, including applicable principles of law, on March 31, 2004 filed its ruling granting the motion; it is hereby

ORDERED, ADJUDGED and DECREED that judgment be and is hereby entered dismissing the plaintiff's complaint.

Dated at Hartford, Connecticut, this 31st day of March, 2004.

KEVIN F. ROWE, Clerk

By: _____
Jo-Ann Walker
Deputy Clerk

EOD: _____